### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:

MERNA RENEE KUHL,

      Debtor(s).

In Proceedings
Under Chapter 7

Case No. 12-30633

OPINION

The chapter 7 trustee seeks an order requiring the debtor to turn over the value of the funds in three bank accounts that she jointly owned with non-debtor family members on the petition date. In making this demand, the trustee relies on a presumption arising under Illinois law that each owner of a joint bank account owns all of the funds in that account. At a hearing on the trustee's First Amended Motion to Compel Turnover ("Motion"), held on October 2, 2012, the debtor presented evidence intended to rebut the presumption by showing that, despite the title on the bank accounts, her husband was the sole owner of the funds in the accounts. The trustee countered with evidence intended to refute the debtor's contention of her non-ownership. The Court finds the following facts:

The debtor and Herman Kuhl were married on November 11, 2011. After their marriage, the debtor's name was placed on three joint bank accounts with right of survivorship with her husband.[1] There was undisputed evidence presented by the debtor that all three accounts had been funded exclusively with monies belonging to Mr. Kuhl and this remained a constant when the debtor filed her solo chapter 7 petition for relief on March 30, 2012. A brief description of these accounts is necessary:

---

[1] One of the accounts also bears the name of Herman Kuhl's son, Todd Kuhl, as a third joint tenant.

1

1.      On November 15, 2011, Mr. Kuhl added the debtor to his existing checking account at Security National Bank ("SNB checking").   This account had been opened in September 1987, by Mr. Kuhl and his then-wife, who was deceased by the time of the events described in this Opinion. The account is jointly owned by the debtor and Mr. Kuhl with a right of survivorship.   In the trustee's Motion, he asserts that on the petition date, the balance in the SNB checking account was $17,978.73.[2]   That amount is not disputed.

2.      On December 12, 2011, Mr. Kuhl added the debtor to an existing checking account at First Community Bank ("First Community checking").   The account is jointly owned by three individuals with a right of survivorship – the debtor, Mr. Kuhl and his son, Todd Kuhl. Mr. Kuhl testified that the funds in this account are used solely for his truck payment.    The trustee asserts in his Motion, and the debtor so testified, that on the petition date, the balance in the First Community checking account was $8,154.54.  That amount is not disputed.

3.      On January 30, 2012, the debtor and Mr. Kuhl opened a savings account at Security National Bank ("SNB savings").   The account is jointly owned by the debtor and Mr. Kuhl with a right of survivorship.   Both the debtor and Mr. Kuhl testified that the funds saved in this account will be used to pay for their health insurance, and for no other purpose.   The trustee asserts in his Motion that on the petition date, the balance in the SNB savings account was $16,006.43.  That amount is not disputed.

Under Illinois law, a presumption exists that each owner of a joint bank account owns all of the funds in that account.  *In re Tucker*, 430 B.R. 499, 502 (Bankr. N.D. Ill. 2010).  *See also Society of Lloyd's v. Collins*, 284 F. 3d 727, 731 (7th Cir. 2002); *In re Cloe*, 336 B.R. 762, 764

---

[2]  When questioning the debtor at the hearing, the trustee appeared, at one point, to confuse the amount in the SNB checking account with the amount in the SNB savings account.  After reviewing the pleadings filed by the parties, including the exhibits attached to the pleadings and the exhibits admitted at the hearing, the Court finds that the trustee's confusion as to the amounts was simply a mistake and of no significance to the Court's decision.

(Bankr. C.D. Ill. 2006).  Once the presumption is established, the burden shifts to the other party "to prove what part, if any, of the funds in the joint account belong solely to the non-debtor joint owner." *In re Tucker*, 430 B.R. at 502.

In the instant case, there is no dispute that the debtor is a joint owner on all three accounts.  Accordingly, a presumption arises that she owns the funds in the accounts. The trustee having established that presumption, the burden shifts to the debtor to show what portion of the funds in the accounts belong to Mr. Kuhl.

The factors used in determining ownership of funds in a joint account include the following:  (1) control over the funds in the account; (2) the source of the funds, *i.e.*, contribution of funds to the account by each party; (3) whether any contribution of funds by one owner constituted a gift to the other; (4) who paid taxes on the earnings from the account; and (5) the purpose for which the account was established. *Id*. at 503; *Highsmith v. Dept. of Public Aid*, 803 N.E.2d 652, 657 (Ill.App.2 Dist. 2004).  Of these five, the courts have accorded greater weight to the first two.  For example, in *Highsmith*, the court noted:

> The two main factors to determine ownership of a joint account are the exercise of control over the funds in a joint account * * * and contributions to the account * * *, which latter concept includes both the determination whether a given contribution by one codepositor constituted a gift to the others and the proprietary source of a given contribution as evidence of its beneficial ownership in the account.

*Id*., citing Annotation, M. Churchill, *Joint Bank Account As Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor,* 86 A.L.R.5th 527, 554 (2001).  *See also Society of Lloyd's v. Collins*, 284 F.3d at 731 (courts must consider the source and use of the jointly held funds); *In re Cloe*, 336 B.R. at 764 (in determining ownership of funds held in a joint account, the two main factors for consideration are the exercise of control over the account and contributions of funds to the account).

In the instant case, the parties agree that all three accounts were funded exclusively with monies belonging to Mr. Kuhl.  With respect to the First Community checking account and the SNB savings account, there was no evidence or testimony to support a finding that the debtor exercised any control over the funds in these accounts.  Likewise, there was no evidence to show that any contribution of funds by Mr. Kuhl was a gift or that one particular party paid taxes on the earnings, if any, from these accounts.  Mr. Kuhl testified that the funds in the First Community checking account are used solely for his truck payment.  The trustee presented no evidence to refute this testimony. With respect to the SNB savings account, both the debtor and Mr. Kuhl testified that the SNB savings account was established to pay for their health insurance. That factor alone, however, does not support a finding that the funds in the savings account belong to the debtor.  Based on these facts, the Court concludes that the funds in both accounts belong to Mr. Kuhl.  The trustee's request for turnover of those funds is therefore denied.

The question of whether the debtor must turn over any portion of the funds in the SNB checking account is not as clear.  Although the account was funded exclusively with Mr. Kuhl's monies, the debtor clearly exercised control over the account.  The debtor testified that because Mr. Kuhl isn't comfortable writing checks, she is the one who "fills out" the checks.  Copies of checks admitted into evidence show that checks are signed by both the debtor and Mr. Kuhl. The debtor also testified that she pays her own bills with money she earns from cleaning, that none of her bills were ever paid with funds from this account, and that the account was not for her own personal use.  Upon further examination, however, the debtor admitted that she uses the funds in the account for various household expenses and/or purchases, including but not limited to, groceries, gas, and miscellaneous purchases at places such as Walmart, Casey's and Target. When asked whether these purchases benefitted her, the debtor readily agreed that they did.

4

According to the debtor's testimony and the checking account statements admitted into evidence, the purchases were made primarily by the debtor and frequently with a debit card.  Mr. Kuhl testified that he was not always with his wife when she used the card, but that eventually he knew about the purchases because they "go over everything."

After reviewing the pleadings, the evidence and the particular facts of this case, the Court finds that the only equitable resolution is to require the debtor to turn over one-half of the proceeds in the SNB checking account to the Trustee.  The Court's decision is based on a consideration of the two main factors discussed above – the source of the funds in the account and the exercise of control over the funds.[3]  Because the account was funded completely by Mr. Kuhl, he should not suffer the consequences of losing those funds in their entirety. On the other hand, because the debtor clearly exercised primary control over the account, equity requires that at least a portion of those funds must be turned over to the bankruptcy estate.  The Court concludes that requiring the debtor to turn over one-half of the account balance is fair and equitable.

According to the Trustee, the account balance in the SNB checking account on the petition date was $17,978.73.  The debtor did not dispute this amount. Therefore, IT IS ORDERED that the debtor shall turn over to the Trustee the sum of $8,989.36.

See Order entered this date.


ENTERED: November 27, 2012

/s/ Laura K. Grandy
_____
UNITED STATES BANKRUPTCY JUDGE

_____

[3]  With regard to the other three factors – whether any funds constituted a gift, who paid taxes on any earnings, and the purpose for which the account was established – there simply was little or no evidence to persuade the Court either way.